CHARLES STIRLING *vs.* HENRY BUCKINGHAM AND ANOTHER.

It is not error for the court to admit proof of the declarations of an agent before the agency is proved. The order of the proof is a matter wholly within the discretion of the judge.

The plaintiff had written a letter to one *C*, in whose hands it was last seen and who had gone to parts unknown. Held that the defendant might introduce secondary evidence of its contents without having first given notice to the plaintiff to produce it.

Declarations of a party in the absence of the other party are not evidence for himself unless they constitute part of the *res gestæ*.

*Res gestæ* are facts and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character.

Certain declarations made after a transaction had been completely finished, held not to be a part of the *res gestæ*.

ASSUMPSIT upon a promissory note; brought to the Court of Common Pleas of Fairfield County, and tried to the jury before *Beers, J.* Verdict for the defendant Buckingham, who alone made defence. Motion for a new trial by the plaintiff for error in the rulings of the court. The case is sufficiently stated in the opinion.

*G. Stoddard,* in support of the motion.

*W. K. Seeley* and *E. W. Seymour,* contra.

LOOMIS, J. This action was brought by the plaintiff as indorsee of a promissory note, executed in the copartnership name of Buckingham & Miller, by Miller, one of the defendants, after the dissolution of the firm, and, as claimed, in fraud of the rights of Buckingham, the other defendant.

The defendant Buckingham claimed to have proved that the plaintiff purchased the note in question on the 6th day of September, 1873, and for the purpose of impeaching the claim of the plaintiff as a bonâ fide holder for value before maturity without notice as to its character, and for the purpose of showing that the plaintiff had received the note after he had been notified by Buckingham, through one Ira D. Clinton, that the note was fraudulent—Buckingham was allowed, against the plaintiff's objection, to testify, in substance, that he knew Ira D. Clinton, that in an interview he had with him in the latter part of August, 1873, he stated that he came in behalf of Mr. Stirling, the plaintiff, and showed a letter from Mr. Stirling to him (Clinton); and then, upon further objection on the part of the plaintiff, the testimony as to the above interview was suspended, and the defendant afterwards called the plaintiff as a witness, who testified that he wrote one or more letters to Ira D. Clinton in regard to the note in suit, and authorized him to make inquiries of Mr. Buckingham and others in the plaintiff's behalf as to this note, and as to the standing of Buckingham, and that the first letter he wrote was written on September 6th, 1873, and that Clinton reported to him about the note by telegrams and letters.

The defendant Buckingham was then recalled, and testified that the substance of the letter shown to him by Clinton in the latter part of August, 1873, from the plaintiff, was that the plaintiff had a note offered him by Miller, purporting to be drawn by Buckingham & Miller, to the order of Miller, for five hundred dollars; that Miller was desirous of exchanging the note for goods, and that the plaintiff was anxious to do so, provided the note was good and would be paid at maturity; that he (Buckingham) told Clinton that no such note was given by any firm with which he was or had been connected, and if there was such a note in existence it was a forgery and would not be paid, and that it was bogus; that Clinton had better notify the plaintiff at once of the fact, and that he (Buckingham) was not good for the note; that Clinton stated that he had called at the City Bank and was

informed that Buckingham was good; that after he (Buckingham) had read the letter he handed it back to Clinton and had not seen it since, and that Clinton was now and for a long time had been absent at some place unknown to the defendant.

The completeness of this evidence will be seen by noting in order its several items:—

1st. The introductory statement by Clinton that he came to the defendant in behalf of the plaintiff, exhibiting at the same time a letter from the plaintiff to him relative to the matter.

2d. Proof, by the plaintiff himself, that Clinton was really his agent for this purpose, and that he had written one or more letters to him, and that he had reported to him concerning the note.

3d. Parol evidence of the contents of the letter exhibited, ' with proof that the same had gone back into Clinton's hands, whose whereabouts then were and long had been unknown to the defendant.

The plaintiff's objection to the above testimony is not on account of irrelevancy, but chiefly that the court ignored the proper order of proof; that some of the declarations of the agent were received before the agency was established, and that the proper foundation was not first laid for the introduction of secondary evidence of the contents of the letter.

It is a sufficient answer to all objections founded on the order and time of admitting evidence, that this is subject always to the discretion of the court and is not a proper subject of review by this court. *Deane* v. *Cummings*, 11 Conn., 158, opinion by WAITE, J.; *State* v. *Alford*, 31 Conn., 46; *Howard* v. *Norton*, 65 Barb., 161; *Snooks* v. *Lord*, 56 N. York, 605.

It is quite true, as claimed by the plaintiff, that the declaration of Clinton "that he came in behalf of the plaintiff" did not tend to prove the agency, and it was not offered or received for that purpose, but as a mode adopted by Clinton to introduce himself and his errand, and when proof was subsequently offered of the fact of his agency, this preliminary

declaration became a proper part of the transaction or interview relied upon.

In regard to the evidence of the contents of the letter, it having been proven that the letter was last shown to be in the hands of Clinton, who had gone to parts unknown, we think secondary evidence was admissible, without first calling on the plaintiff to produce the letter. *Shepard* v. *Giddings*, 22 Conn., 282.

In the discussion before this court the counsel for the plaintiff gave much prominence to the point that the defendant testified that his interview with Clinton, when the letter was shown, was in the latter part of August, but that in proving the agency by the testimony of the plaintiff it was shown that the first letter to Clinton was written on the 6th of September; and from this it was argued that no agency was proved at the time of the interview, to wit, the latter part of August. Such a trifling discrepancy in the recollection of witnesses as to dates is very common; and the objection, if it ever had any force, ought to have expended itself in the court below, whose exclusive province it was to determine all questions of fact. The vital point of inquiry was whether the transaction between Clinton and the defendant was identical with the one authorized by the plaintiff, no matter when it took place, provided of course it was before the purchase of the note; and such a transaction after the purchase would have been a most unnatural, not to say impossible one.

The next matter of complaint in the motion for a new trial is, that the court refused to allow the plaintiff to testify as to a conversation he had with Isaac Miller, a third party who afterwards held the note and passed it to the plaintiff for goods, in relation to the character of the note, when the defendant was not present, and which was conceded to have occurred after the goods sold (which were exchanged for the note) had been delivered, and after the note in question had been received by the plaintiff.

The declarations of a party in his own favor in the absence of the other party are not evidence for himself unless they constitute part of the *res gestæ*. *Russell* v. *Frisbie*, 19 Conn., 205; *Enos* v. *Tuttle*, 3 Conn., 250. *Res gestæ* are the circum-

stances, facts and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character.

The case at bar cannot be brought within this definition. The conversation sought to be introduced was after the whole transaction as to the note had been completely finished; it does not appear how long after, but if it was immediately after, it would be equally inadmissible under the circumstances of this case. *Smith* v. *Webb*, 1 Barb., 230; *Miller* v. *The State*, 8 Gill, 141.

The only remaining grievance stated in the plaintiff's motion is, that the counsel for the defendant were permitted against his objection to hand the plaintiff a letter while he was under cross-examination, and ask him to look at it and see if his recollection was not refreshed by it; to which he replied, " The letter does not refresh my recollection." This point is too trivial to require discussion. In what way an unavailing effort to refresh the plaintiff's recollection could injure his cause it is impossible to determine.

A new trial is not advised.

In this opinion the other judges concurred.