FELKER v. HYMAN et al.

(Court of Civil Appeals of Texas. March 4, 1911.)

1. STATUTES (§ 248*)—COURTS—TIME OF TAKING EFFECT.

Acts 1909, c. 8, amending Acts 1905, c. 78, providing for the holding of the district court in the Thirty-Second judicial district, did not become effective until the circuit beginning in 1909, under the act of 1905, had been completed, since to delare the act effective as soon as it became law would have given to B. county only one term of court in 1909 in violation of Const. art. 5, § 7, requiring at least two terms in that county.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 330; Dec. Dig. § 248.*]

2. LANDLORD AND TENANT (§ 232*)—ACTION FOR RENTAL VALUE—RECOVERY—EXCESSIVENESS.

Plaintiffs leased a boundary of land to defendant for grazing purposes at 10 cents an acre, the contract providing for a rebate in case of loss to the lessor for any cause at the rate of 10 cents per acre for all land lost. In a suit to cancel the lease, to recover possession, and for the reasonable rental value of the land, plaintiff was awarded 8 cents per acre on 60,-957 acres. Held, that such judgment was excessive; it having been shown that plaintiff owned and controlled only 57,797.9 acres.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 935–939; Dec. Dig. § 232.*]

3. LANDLORD AND TENANT (§ 202*)—LEASE—CONSTRUCTION.

A lease for grazing land stipulating that it should run for 10 years from and after November 9, 1901, that the rent should be paid annually in advance, and that the lessor might pay the same within 30 days from the due date, reciting payment for the first year at the date of the contract. The lessee paid rent up to the year beginning November 9, 1908, and on December 11th following the lessor declared the lease canceled for failure to pay at that date rent for the year beginning November 9, 1908. Held, that the rent became due on November 9th of each year and was payable at any time within 30 days thereafter, and that the court properly charged that the lease was legally canceled and refused to charge that the annual

rentals did not mature until January 1st of each year, if such was the understanding of the parties at the time they executed the contract.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 802–806; Dec. Dig. § 202.*]

4. EVIDENCE (§ 113*)—MARKET VALUE—INTRINSIC OR ACTUAL VALUE.

Where the value of an article is in issue, and it is shown that it has a fixed market value, that value is controlling to the exclusion of evidence of any other character; but, if it is a controverted issue as to whether or not the article has a market value, then evidence is admissible to show intrinsic or actual value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. § 113.*]

5. APPEAL AND ERROR (§ 1056*)—EXCLUSION OF EVIDENCE—PREJUDICE.

Where, in a suit to recover the rental value of grazing lands, no witnesses testified that the annual rental value was lower than eight cents per acre per annum, which was the amount the jury awarded, defendant was not prejudiced by the exclusion of evidence that the location of other ranches, the rental value of which was shown for the purpose of comparison, was above a quarantine line, and that they were therefore more valuable because cattle raised thereon were worth more than those of the same class, raised below quarantine line.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193; Dec. Dig. § 1056.*]

Appeal from District Court, Mitchell County; Jas. L. Shepherd, Judge.

Action by S. Minna Hyman and others against W. R. Felker. Judgment for plaintiffs, and defendant appeals. Reversed on condition.

Ed. J. Hamner, for appellant. Matlock, Bell & Lipscomb, for appellees.

DUNKLIN, J. W. R. Felker has appealed from a judgment in favor of Mrs. S. Minna Hyman joined by her husband, Harry Hyman, for $5,689.32 rental due plaintiff on land, for the cancellation of a lease thereon formerly executed by plaintiff to defendant, and for the possession of the land.

[1] Under appellant's first assignment of error the contention is made that the term of court at which the judgment was rendered was not authorized by law, and that therefore the judgment was void. This contention is predicated upon the following facts: The term of court in question was held under an act of the Legislature passed April 12, 1905, shown in Pamphlet Acts at page 109, fixing the terms of court for the Thirty-Second judicial district, which act was amended February 3, 1909 (Pamphlet Acts, p. 10). By the terms of the act of 1905, the circuit of terms to be held by the district court of the Thirty-Second district for each year began in Midland county and closed in Mitchell county; the terms for Midland county beginning on the first Monday in February and September with an authorized duration of each term of three weeks, and the terms for Mitchell county beginning on the seventeenth

Monday after the first Monday in February and September with an authorized duration of each term of four weeks. By the act of 1909, the circuit of terms for each year began in Borden county and ended in Garza county; the terms for Borden county beginning on the first Monday in February and September with an authorized duration of two weeks for each term, and the terms for Garza county beginning on the twentieth Monday after the first Monday in February and September with an authorized duration of each term of one week. The first Monday in February, 1909, was the first day of that month. The act of 1909 became a law February 3, 1909, two days after the beginning of the circuit of terms in the Thirty-Second judicial district for the year 1909, and under the old law that circuit was completed prior to the first Monday in February, 1910. If the act of 1909 had become effective as soon as it became a law, Borden county would have been given but one term of court during the year 1909, contrary to section 7, art. 5, of the Constitution of our state, which required at least two terms in that county, and by reason of that fact our Supreme Court held that the act of 1909 did not become effective until the circuit beginning in 1909 under the old act of 1905 had been completed. Bowden v. Crawford (Sup.) 125 S. W. 5. Hence appellant's first assignment of error is overruled.

By contract in writing dated November 9, 1901, Mrs. Hyman, who was then Mrs. Scott, leased to appellant 104 sections of land for pasturage purposes, at the price of 10 cents per acre per annum payable yearly in advance, but with privilege on the part of appellant to pay any installment of rent within 30 days from the date the same became due; the contract stipulating that a failure to pay rent according to the terms of the contract would at the lessor's option terminate the lease, appellant paying rent for one year at the date of the execution of the lease. Some of the land included in the lease was held by the lessor under a lease from other owners, and her title to other tracts proved to be invalid. There was a stipulation in the lease contract for a rebate of the rental in the event of a loss to the lessor of any of the land for any cause; the rebate to be at the rate of 10 cents per acre for all land so lost. The lessee paid rents provided for in the contract for each and every year up to the year beginning November 9, 1908, and on December 11, 1908, the lessor declared the lease canceled by reason of appellant's failure up to that date to pay rent for the year beginning November 9, 1908. On the date last named the lessor owned and controlled only 91 tracts aggregating 57,797$^9/_{10}$ acres of the land originally included in the lease. Previously to that date full settlements had been made by agreement between the parties of all rebates in the rent according to the terms of the lease by reason of the loss by the lessor of different tracts of land originally included in the lease. [2] In this suit plaintiffs sought a decree canceling the lease, for possession of the land, and for judgment against appellant for the rental value of the land from and after November 9, 1908. The judgment awarded plaintiffs 8 cents per acre per annum from November 9, 1908, to January 6, 1910, on 60,957 acres, aggregating $5,689.32. As shown above, the lessor owned and controlled 57,797.9 acres only, and the judgment was therefore excessive, and this error will require a reversal of the judgment.

The facts recited above were conclusively established by evidence, and they are not challenged by appellant, and, as the judgment will be reversed for the excessive allowance of rent as shown above, it becomes immaterial to consider whether or not there was error in the refusal of the court to instruct the jury that the lease could not be considered as evidence of the lessor's title to any land, other than those to which she proved title by other evidence; or in admitting the lease in evidence; or in admitting in evidence a letter written by appellee Harry Hyman wherein a claim was made for rent on more than 57,797$^9/_{10}$ acres; or in permitting Harry Hyman to testify to his conclusion as to the total amount of land remaining at the date the lease was canceled and as to the amount due by appellant; or in admitting the letter from Mrs. Hyman to appellant giving her interpretation of the lease contract; or in the charge of the court permitting a recovery of rent of more than 57,797$^9/_{10}$ acres.

[3] The lease contract stipulated that it should run for 10 years from and after November 9, 1901, that the annual rental should be due in advance, but giving the lessee privilege to pay same within 30 days from the due date, and recited the payment of the rent for the first year as paid at the date of the contract. There was no ambiguity in these terms of the contract, and the court was warranted in instructing the jury that the lease was legally canceled on December 11, 1908, and that thereafter the lessor was entitled to possession of the land, and in refusing a special instruction requested by appellant in effect that the annual rentals did not become due until January 1st of each year if such was the understanding of the parties at the time they executed the lease contract. For the same reason there was no error in the exclusion of appellant's testimony that prior installments of rents had been paid in the months of November and December because the lessor claimed she needed the money. The lessor having already settled with the lessee for all shortage in the lands originally leased by allowing him the amounts of rebates agreed on by both parties, and there being no evidence to show mistake or fraud in those settlements, there was no basis for the requested instruc-

tions submitting appellant's claim for further credits on account of such shortage in the acreage.

In order to show the rental value of the land in controversy, appellees introduced evidence of the rental values of other ranches by way of comparison. Appellant then offered to prove by several witnesses that those ranches were situated above the quarantine line; that the ranch in controversy was situated below the quarantine line; and that cattle raised above the quarantine line were worth from $2 to $4 per head more than those of the same class, age, and condition grown below the quarantine. This testimony was excluded by the court, and its exclusion is assigned as error. Appellees insist that, as the evidence shows conclusively that the land in controversy had an established rental value upon the market, the evidence was properly excluded. We have examined the record and find that the testimony of one of the witnesses fairly tends to show that there was no fixed market value for the rental of such lands. [4] We understand the rule to be that where the value of an article is put in issue, and it is shown that it has a fixed market value, that value will be controlling to the exclusion of evidence of value of any other character (T. & P. Ry. Co. v. Dishman, 41 Tex. Civ. App. 250, 91 S. W. 828); but that, if it is a controverted issue whether or not the article has a market value, then testimony is admissible to show intrinsic or actual value. G., H. & S. A. Ry. v. Powers, 117 S. W. 461. [5] Under the rule as applicable in the latter contingency, perhaps, the testimony excluded should have been admitted; but we think the error, if any, in excluding it was harmless in view of the fact that no witness testified that the rental value of the land in controversy was lower than 8 cents per acre per annum. One of the witnesses introduced by appellant fixed the rental value of the land at 10 cents per acre, another witness introduced by appellant fixed the same at 8 cents per acre; and, after a careful examination of the record, we have been unable to find any estimate lower than the value last mentioned. Besides, the record shows that appellant protested against the cancellation of the lease at the time it was canceled, thus showing a willingness to continue to pay therefor 10 cents per acre, the price named in the lease, and it was shown by other testimony, which was uncontroverted, that appellees had been offered more than 10 cents per acre as a rental for the land since the termination of the lease. It was further shown by testimony which was uncontroverted that the rental value of such lands as those in controversy had not depreciated, but had increased since the year 1901 when the lease was executed. Hence it is altogether improbable that, had the proffered testimony been admitted, the same would have caused the jury to return a verdict for rent at a rate lower than 8 cents per acre per annum.

On account of the excessiveness of the verdict and judgment as shown above, the judgment will be reversed, and the cause remanded, unless appellees shall within 20 days from the date of this decision file a remittitur of $292.75, in which latter event the judgment will be reformed and affirmed in favor of appellees for $5,396.57 and all costs of this appeal taxed against the appellees.